IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-018

Filing Date: February 2, 2021

No. A-1-CA-36967

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOSE LUIS AGUILAR,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Jacqueline D. Flores, District Judge

Certiorari Denied, March 12, 2021, No. S-1-SC-38709. Released for Publication June 29, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

YOHALEM, Judge.

{1}    Defendant Jose Luis Aguilar appeals from convictions of possession of a controlled substance, in violation of NMSA 1978, Section 30-31-23(E) (2011, amended 2019), and concealing identity, in violation of NMSA 1978, Section 30-22-3 (1963). Defendant first appeals the district court's denial of his motion to suppress evidence, claiming that the evidence was obtained as the consequence of unlawful detention and questioning by police. Substantial evidence presented at the suppression hearing

supports the district court's denial of Defendant's motion to suppress. Because this is the only basis on which Defendant appeals his conviction of possession of a controlled substance, we affirm that conviction.

**{2}** Defendant seeks reversal of his concealing identity conviction on three additional grounds: (1) the evidence at trial was insufficient to establish that the police officer was acting in a "legal performance of his duty," as required by Section 30-22-3; (2) the district court erred in refusing to give Defendant's requested concealing identity jury instruction; and (3) the district court erred in refusing to clarify the instruction that the police officer must act in the "legal performance of his duty" in response to the jury's questions during deliberations. We agree with Defendant that reasonable suspicion to detain and question a suspect is an essential element of the charge of concealing identity, pursuant to Section 30-22-3. We agree as well that the State failed to introduce sufficient evidence at trial to prove beyond a reasonable doubt that the officer had reasonable suspicion to detain Defendant. Because we reverse on this ground, we do not consider Defendant's remaining claims of error.

**BACKGROUND**

**{3}** The Albuquerque Police Department was dispatched to a local restaurant following a call by the restaurant's manager. The manager reported that she was concerned about a group of four or five people, including Defendant, who were in the restaurant and were acting suspiciously. The manager reported that each person in the group was in the restroom for ten minutes, one after another. When the last person in the group, a woman, had been in the restroom for twenty minutes and failed to respond to the manager's knock on the restroom door, the manager called the police. The manager testified that the group's use of the restroom made her suspect drug activity.

**{4}** Two officers arrived approximately ten minutes after the manager called the police. By that time, most of the group had left. The only members of the group left at the restaurant were the woman, who remained inside the restroom, and Defendant. Defendant had left the table where the group had shared a pizza and was standing outside under the restaurant's awning.

**{5}** The officers spoke with the manager for less than one minute and then knocked on the restroom door. When a woman came out of the restroom, the officers began to question her. One of the officers asked the woman who she was with, and she pointed out Defendant. Officer Willsey went outside to talk to Defendant.

**{6}** Officer Willsey first asked Defendant whether he had a weapon. When Defendant answered that he had a pocket knife, Officer Willsey patted Defendant down and found two pocket knives.

**{7}** Officer Willsey then asked Defendant for his name. Defendant gave the officer a false name. Officer Willsey told Defendant to sit on a nearby curb while the officer ran a computer check. The State admitted that Officer Willsey had detained Defendant and

that Defendant was not free to leave. Officer Willsey testified both at the suppression hearing and at trial that he detained Defendant on suspicion of criminal trespass. *See* NMSA 1978, § 30-14-1 (1995) (defining criminal trespass); *see also* UJI 14-1402 NMRA (providing a criminal trespass uniform jury instruction).

{8}     When, after several minutes, Officer Willsey could not confirm Defendant's identity, Officer Willsey confronted Defendant and demanded his correct name and social security number. Defendant again gave Officer Willsey a false name and social security number. Officer Willsey went back to his computer and discovered that the social security number Defendant had given him belonged to a woman.

{9}     As Officer Willsey was completing his second identity check, he noticed that Defendant was staring at the transit center across the street. Officer Willsey suspected Defendant was planning to run. Shortly after, Defendant ran across the street toward the transit center. Officer Willsey apprehended and arrested him. In a search incident to Defendant's arrest, five bindles of methamphetamine were found in Defendant's jacket pocket. Defendant was charged with concealing identity, in violation of Section 30-22-3, and possession of a controlled substance, in violation of Section 30-31-23(E).

{10}     Defendant filed a pretrial motion to suppress all statements made and all evidence seized after his detention by Officer Willsey, arguing that the evidence was insufficient to establish that Officer Willsey had reasonable suspicion to detain and question him. The district court denied the motion to suppress. Defendant was tried before a jury on both charges.

{11}     At the conclusion of the State's evidence at trial, Defendant moved for a directed verdict on the charge of concealing identity. He argued that the State was required to prove as an element of concealing identity that the officer had "reasonable suspicion" to detain and question Defendant, pursuant to Section 30-22-3, and had failed to do so. The district court denied the motion for directed verdict and allowed both charges to go to the jury.

{12}     Defendant then requested that the district court instruct the jury that they needed to find the officer had reasonable suspicion to detain Defendant to convict Defendant of concealing identity. The court denied Defendant's request. Defendant was convicted by the jury of both offenses.

{13}     This appeal followed. Because the evidence offered by the State to establish that Officer Willsey had reasonable suspicion to detain and question Defendant differed significantly at trial from that offered at the suppression hearing, the evidence relevant to our decision will be reviewed during the discussion of each issue below.

**DISCUSSION**

**I.     The District Court Properly Denied Defendant's Pretrial Motion to Suppress**

**{14}** Defendant challenges the denial of his motion to suppress, arguing that Officer Willsey lacked reasonable suspicion to believe that Defendant had committed or was about to commit a crime when he was detained. We conclude that substantial evidence at the suppression hearing supports the district court's denial of Defendant's motion to suppress because the evidence establishes that Officer Willsey had an objectively reasonable basis to suspect that Defendant had committed criminal trespass when he detained Defendant.

**{15}** "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "First, we look for substantial evidence to support the district court's factual findings, with deference to the district court's review of the testimony and other evidence presented." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (alteration, internal quotation marks, and citation omitted). We then review de novo the ultimate determination of reasonable suspicion because "the decision of whether police conduct was objectively reasonable extends beyond fact-finding." *State v. Neal*, 2007-NMSC-043, ¶ 19, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). Our review of a suppression hearing relies on the entire record, not just the record of the suppression hearing. *State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134.

**{16}** Reasonable suspicion is viewed from the perspective of what the officer knew at the time the officer detained a suspect. *See State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579. "Reasonable suspicion must exist at the inception of the stop and cannot be based on facts that arise as a result of the encounter." *State v. Ortiz*, 2017-NMCA-006, ¶ 13, 387 P.3d 323 (internal quotation marks and citation omitted). "Reasonable suspicion exists where an officer can point to specific articulable facts, together with rational inferences from those facts that, when judged objectively would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted). Unsupported intuition or inarticulate hunches are not enough. *Id.*

**{17}** At the suppression hearing, Officer Willsey testified that he and his partner were dispatched to the local restaurant through a computer-aided dispatch system (CADS) after the restaurant's manager made a suspicious person call to the police. The CADS gave Officer Willsey a narrative of why he was being dispatched. When Officer Willsey arrived at the restaurant, he spoke to the manager. Officer Willsey testified that the manager pointed out Defendant, identifying him as one of the individuals who had been inside the restroom. Defendant was standing outside under the restaurant's awning.

**{18}** On cross-examination, Officer Willsey testified that the CADS synopsis indicated that the group of people ordered food. On redirect-examination, however, Officer Willsey testified that, when he arrived at the restaurant, the manager informed him that Defendant had neither purchased nor eaten food, and had refused to leave when asked to do so by the manager. Officer Willsey further testified that he saw a sign stating that

no one was permitted to remain inside the restaurant if they did not purchase or consume food.

**{19}** Defendant points to the stipulation of the State at the suppression hearing, later confirmed by the manager's testimony at trial, that Defendant did, in fact, purchase food. Defendant argues that this stipulation and testimony undermines the district court's conclusion that Officer Willsey had reasonable suspicion that Defendant had engaged in criminal trespass when he detained Defendant for questioning. We disagree.

**{20}** The legal standard for reasonable suspicion places the focus of the inquiry on the "totality of the circumstances known to the officer[.]" *State v. Barragan*, 2001-NMCA-086, ¶ 12, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. An objective test is then applied. *Hubble*, 2009-NMSC-014, ¶ 8. The subjective belief of the officer does not affect the validity of the detention; "it is the evidence known to the officer that counts[.]" *Id.* "[T]he question is whether there were facts available to [the officer] that would warrant a person of reasonable caution to believe the stop was appropriate." *State v. Brennan*, 1998-NMCA-176, ¶ 10, 126 N.M. 389, 970 P.2d 161.

**{21}** The first question then is a question of fact: what circumstances were known to Officer Willsey when he detained Defendant? Although the district court did not make specific findings of fact, the district court ruled that Officer Willsey had reasonable suspicion of criminal trespass. Construing conflicting evidence in support of the district court's ruling, as we must, we hold that Officer Willsey's testimony that he was told by the manager that the group had neither ordered nor eaten food is sufficient, objective evidence to support the district court's ruling that Officer Willsey had a reasonable suspicion of criminal trespass. *See State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856 ("When the evidence conflicts, we consider the evidence that supports the district court's ruling; and we will draw all inferences and indulge all presumptions in favor of the district court's ruling."). We also defer to the district court's evaluation of the credibility of the witnesses when, as is the case here, the district court is acting as the fact-finder. *See State v. Evans*, 2009-NMSC-027, ¶ 37, 146 N.M. 319, 210 P.3d 216 ("[An appellate court is] unable to view the witness's demeanor or manner of speech, and therefore [is] not in a position to evaluate many of the aspects of witness credibility that the trier of fact may evaluate.").

**{22}** Even if the evidence at trial shows that Officer Willsey was mistaken as to the underlying facts, that mistake of fact does not undercut his objective grounds for reasonable suspicion. *See State v. Bent*, 2013-NMCA-108, ¶ 17, 328 P.3d 677 ("[A] mistake of fact is a mistake about a fact that is material to a transaction[.]"); *see also Hubble*, 2009-NMSC-014, ¶¶ 22, 31-32 (holding that an officer can have reasonable suspicion even if it turns out he was mistaken about the facts). We therefore affirm the district court's denial of Defendant's motion to suppress.

## II. The Evidence of Reasonable Suspicion Was Insufficient to Support Defendant's Concealing Identity Conviction

{23}    Defendant claims that reasonable suspicion of the commission of a crime is a required element of concealing identity, contrary to Section 30-22-3, and that the State failed to introduce sufficient evidence at trial to prove that Officer Willsey had reasonable suspicion. In the absence of a uniform jury instruction on concealing identity, the jury was instructed using the statutory language. The jury was instructed that, to find Defendant guilty of concealing identity, the jury must find beyond a reasonable doubt:

1.    [D]efendant concealed his name or identity;

2.    [D]efendant intended to intimidate, hinder or interrupt [Officer] Willsey in the legal performance of his duty;[1]

3.    This happened in New Mexico on or about the 16th of January, 2017.

*See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

{24}    Defendant challenges the second instructed element. Specifically, Defendant contends that proof of reasonable suspicion to question a defendant is required to establish that the officer was acting in the "legal performance of his duty" and that the evidence at trial was insufficient to support that Officer Willsey had reasonable suspicion to legally detain and question Defendant about his identity. We agree.

### A.    Proof of Reasonable Suspicion to Detain and Question Is Required

{25}    Defendant first contends that the element of the crime of concealing identity, which states that the police officer be acting in the "legal performance of his duty," requires the State to prove that the police officer had "reasonable suspicion" that Defendant was involved in criminal activity. The State disagrees and argues that reasonable suspicion is not required.

{26}    This Court previously addressed this very issue in *Ortiz*, 2017-NMCA-006, ¶ 12. We held, consistent with the Fourth Amendment of the United States Constitution, that Section 30-22-3, which mandates that the officer asking for identity be acting in the "legal performance of his duty," requires that the state prove that the officer had reasonable suspicion to detain and question a defendant. *See Ortiz*, 2017 NMCA-006, ¶¶ 11-12. Absent evidence establishing reasonable suspicion, the seizure of a

---

[1]The jury instruction combined what are generally two separate elements into a single element. *See Ortiz*, 2017-NMCA-006, ¶ 10.

defendant for questioning is unlawful under the Fourth Amendment and the state cannot prove that the officer was acting in the "legal performance of his duty." *Id.* ¶ 12.

**{27}** Despite this clear precedent, the State argues that an officer is acting in the "legal performance of his duty" anytime the officer is acting within the scope of his employment, even if he does not have reasonable suspicion to detain and question a suspect. The State relies on *State v. Doe*, 1978-NMSC-072, ¶ 14, 92 N.M. 100, 583 P.2d 464, a case distinguished by this Court in its opinion in *Ortiz*. *See* 2017-NMCA-006, ¶ 12 n.3. *Doe* addresses a similarly-worded requirement in New Mexico's battery upon a peace officer statute, NMSA 1978, § 30-22-24 (1971) (formerly NMSA 1953, § 40A-22-23 (1971), that the officer be "in the lawful discharge of his duties." *Doe*, 1978-NMSC-072, ¶¶ 12-14.

**{28}** As this Court explained in *Ortiz*, however, the language at issue, although nearly identical in the two statutes, serves a very different purpose in each statute. 2017-NMCA-006, ¶ 12 n.3. The battery upon a peace officer statute is intended to protect an officer who is acting in the scope of his employment from physical attack. *Id.* "As our Supreme Court observed in *Doe*, societal interests demand that a police officer carrying out his or her duties in good faith be free from threat or physical harm." *State v. Tapia*, 2000-NMCA-054, ¶ 17, 129 N.M. 209, 4 P.3d 37. "[S]ound public policy favors protecting police officers from assault or battery, regardless of whether the officer's actions were technically legal or illegal." *Id.* Thus, we do not focus on the legality of the officer's conduct as an element of battery upon a peace officer. We look to whether the officer was "acting in good faith and within the scope of what the officer is employed to do." *Id.* ¶ 17.

**{29}** We do, however, focus on the legality of an officer's conduct as an element of the crime of concealing identity. *See Ortiz*, 2017-NMCA-006, ¶ 12. Where an officer seizes a peaceful citizen to interrogate him about his identity, our Legislature has required, consistent with the Fourth Amendment, that the detention be lawful. *Id.* A detention for questioning about identity is not within a "legal performance of [the officer's] duty[,]" as the phrase is used by our Legislature in Section 30-22-3, unless that officer has reasonable suspicion that a crime has been or is being committed. *Ortiz*, 2017-NMCA-006, ¶¶ 11-12. The purpose of the phrase "legal performance of [the officer's] duty" is not merely to make sure that the officer is on duty and identifiable as a police officer, but to ensure that the detention and questioning meets constitutional standards. Unless the officer has reasonable suspicion to detain the suspect and question him about his identity, concealing one's identity is not a crime and the individual is free to walk away. *Id.* ¶ 12.

**{30}** We therefore reaffirm our holding in *Ortiz* that the crime of concealing identity, pursuant to Section 30-22-3, requires the state to prove that the officer had reasonable suspicion to detain and question the defendant.

**B.    Sufficiency of the Evidence**

**{31}** Defendant next contends that the evidence at trial was insufficient to prove Officer Willsey had "reasonable suspicion" that Defendant was involved in any criminal activity. We agree.

**{32}** Evidence is sufficient to support a verdict only if "direct or circumstantial evidence exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Ortiz*, 2017-NMCA-006, ¶ 9 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (emphasis, internal quotation marks, and citation omitted).

**{33}** In this case, the evidence presented at trial significantly differed from the evidence presented to the district court at the suppression hearing. Since reasonable suspicion is an element of the crime of concealing identity and Defendant challenges the sufficiency of the evidence as to this element, our review focuses solely on the evidence presented at trial. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 ("The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support [the jury's] verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." (internal quotation marks and citation omitted)). We do not consider the evidence presented during the suppression hearing.

**{34}** We conclude that the sparse evidence at trial concerning what Officer Willsey knew was not sufficient to establish that Officer Willsey had reasonable suspicion that Defendant had committed or was committing any crime. "An investigatory stop must be supported by a particularized suspicion, based on the totality of the circumstances known to the officer, that the particular individual . . . is engaged in wrongdoing or was involved in a completed [crime]." *Barragan*, 2001-NMCA-086, ¶ 12. As noted above, the facts known to the officer are viewed through an objective lens to determine whether the "specific articulable facts, observed by the officer, together with rational inferences from those facts" would lead a reasonable person to believe criminal activity occurred or is occurring. *Ortiz*, 2017-NMCA-006, ¶ 13.

**{35}** Focusing, as we must, solely on the evidence that establishes what Officer Willsey knew at the time he detained Defendant, we hold that objectively, the facts available to Officer Willsey were insufficient to support reasonable suspicion of either criminal trespass or of a criminal drug offense. *See Hubble*, 2009-NMSC-014, ¶ 8 (holding that the determination of reasonable suspicion involves only examining "the evidence known to the officer").

**{36}** Officer Willsey testified at trial that his understanding was that he was dispatched to the restaurant because the restaurant's manager suspected that a male and female

were using drugs inside the restaurant's restroom. The CADS report prepared by dispatch was not introduced into evidence at trial, and apart from this single statement about Officer Willsey's understanding before he arrived at the restaurant, the only testimony Officer Willsey offered regarding the information he was given by dispatch was that there was a group of four people at the restaurant, including a woman and Defendant. *See State v. Cobbs*, 1985-NMCA-105, ¶¶ 13-17, 103 N.M. 623, 711 P.2d 900 (reviewing whether reasonable suspicion was established based on the information relayed to the officer by dispatch and the officer's observations once he arrived at the scene).

**{37}**   When Officer Willsey and his partner arrived at the restaurant, the testimony establishes that the manager pointed out Defendant as one of the group of four people, told the officers the others had left, and described a woman who remained locked in the restroom. Defendant was standing outside under an awning. After a conversation with the manager, which Officer Willsey acknowledged lasted less than thirty seconds, the officers knocked on the bathroom door repeatedly.

**{38}**   When the woman came out, the officers began to question her. Officer Willsey testified that the woman seemed nervous, and he mentioned on cross-examination that he saw blood on her arms. When asked whether she was using drugs, the woman claimed she needed to use the bathroom facilities and was not using drugs. In answer to Officer Willsey's question about whether she was with anyone, the woman pointed to Defendant, who remained standing outside.

**{39}**   Officer Willsey left his partner and went outside to speak with Defendant. Officer Willsey could not remember if Defendant appeared to be under the influence. He admitted that his police report did not mention that anything about Defendant suggested drug use. Officer Willsey acknowledged that an appearance of drug use was something he would have noted in his report had he observed it.

**{40}**   Shortly after making contact with Defendant, Officer Willsey detained Defendant and began to question him about his identity.[2] When asked the basis for his detention of Defendant, Officer Willsey testified that he thought Defendant was criminally trespassing; he knew Defendant was "inside the business at one point," and he saw a sign on the restaurant wall stating that anyone who does not order food is not permitted on the premises. Officer Willsey offered no facts to support his belief that Defendant had not ordered food.

**{41}**   We conclude that this evidence is insufficient to establish that Officer Willsey had a reasonable suspicion, based on the facts and circumstances known to him, that Defendant had criminally trespassed on the restaurant premises. *See State v. Patterson*, 2006-NMCA-037, ¶ 16, 139 N.M. 322, 131 P.3d 1286 (holding that the

---

2It is undisputed that, by this point, Defendant was not free to leave and was seized within Fourth Amendment standards.

"Fourth Amendment is violated when an officer detains an individual with no more than a generalized suspicion, or unarticulated hunch or suspicion").

{42} Although admittedly a closer call, the trial evidence also failed to establish reasonable suspicion that Defendant was involved in criminal drug activity. Even if the manager's suspicion in her call to dispatch, the woman's excessive time in a locked restroom, and Officer Willsey's observation of blood on the woman's arms qualify as articulable facts to support reasonable suspicion of criminal drug activity by the woman, these facts do not apply equally to Defendant. "To justify detention, suspicion must be particular to the individual being detained." *Id.*; *accord Neal*, 2007-NMSC-043, ¶ 30 (holding that mere association with a criminal is not enough to establish reasonable suspicion). There must be specific, articulable facts which support a reasonable inference that the particular individual who is detained for questioning is engaged in wrongdoing. *Patterson*, 2006-NMCA-037, ¶¶ 16-17. This standard was not met at trial in this case. We therefore conclude that there are no facts particularized to Defendant which are sufficient to create a reasonable suspicion of criminal drug activity by Defendant. We therefore conclude that the evidence at trial was insufficient to support a finding by the jury that Officer Willsey had reasonable suspicion to detain and question Defendant.

**CONCLUSION**

{43} For the forgoing reasons, we reverse Defendant's conviction for concealing identity. We hold that reasonable suspicion of criminal activity is an element of the crime of concealing identity, which must be proved beyond a reasonable doubt at trial. Because the evidence at trial was insufficient to establish that the officer had reasonable suspicion that Defendant committed a crime, he was not acting within "the legal performance of his duty" when he detained and questioned Defendant. The reversal being for insufficient evidence, the cause is remanded with instructions to dismiss the charge of concealing identity. Defendant's conviction of possession of a controlled substance is affirmed.

**{44} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**