This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40830**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**ESTEVAN MAESTAS**
**a/k/a ESTEVAN A. MAESTAS,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer J. Wernersbach, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl Francolini, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**    The State of New Mexico appeals the district court's grant of Defendant's motion to suppress evidence. The State argues that the district court erred by improperly relying on after-the-fact surveillance footage to determine whether Deputy Young had reasonable suspicion to stop Defendant, rather than relying on the facts known to

Deputy Young at the time of the stop. We agree and reverse the district court's grant of Defendant's motion to suppress.

**BACKGROUND**

**{2}**     Around two o'clock in the morning, on January 4, 2022, Deputy Young was stopped at a light on Las Estancias Boulevard in Albuquerque when he observed a gold, four-door sedan driven by a man wearing a hoodie driving at a high rate of speed, above the posted speed limit. Deputy Young then turned to follow the vehicle onto Coors Boulevard, where he lost sight of it for five to seven seconds before he turned onto Gun Club Road, SW and saw a gold, four-door sedan parked at the Circle K at 4400 Coors Boulevard, SW (the gas station). Deputy Young believed Defendant's vehicle was the same vehicle he observed speeding on Coors Boulevard. Deputy Young observed Defendant wearing a hoodie—as was the driver of the speeding gold sedan—while standing adjacent to the passenger side of the gold sedan at the gas station. Based thereon, Deputy Young pulled into the gas station parking lot and conducted a traffic stop.

**{3}**     Deputy Young's investigation quickly revealed that Defendant was driving on a revoked driver's license, at which point Deputy Young arrested Defendant. Deputy Young then searched Defendant's car finding, what appeared to be, narcotic painkillers. Defendant was ultimately indicted by a grand jury for trafficking a controlled substance by possession with intent to distribute (fentanyl and/or oxycodone), contrary to NMSA 1978, Section 30-31-20 (2006) and driving on a revoked license (DWI related), contrary to NMSA 1978, Section 66-5-39.1 (2013).

**{4}**     Defendant then filed a motion to suppress all evidence arising from the stop on the basis that Deputy Young lacked reasonable suspicion to seize Defendant, violating his rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The district court held a hearing on the motion, concluding that Deputy Young lacked reasonable suspicion when he stopped Defendant, relying primarily on surveillance footage from the gas station showing that Defendant had been parked for approximately eighteen minutes before Deputy Young arrived.

**DISCUSSION**

**I.     Standard of Review**

**{5}**     Our review of both a motion to suppress and the district court's determination of whether or not an officer had reasonable suspicion to conduct a stop are mixed questions of law and fact. *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957; *State v. Goss*, 1991-NMCA-003, ¶ 16, 111 N.M. 530, 807 P.2d 228. "We review factual determinations for substantial evidence and legal determinations de novo." *Ketelson*, 2011-NMSC-023, ¶ 9; *see also State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186. Because our review of the district court's findings of fact is

deferential, we indulge all reasonable inferences in support of its ruling and disregard evidence to the contrary. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We then review the district court's application of the law de novo to determine "the constitutional reasonableness of [the] . . . seizure." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885.

## A.      The Surveillance Footage

{6}      The State argues that the district court improperly relied on the gas station surveillance footage, which was obtained by Defendant after he had already been charged, in concluding that Deputy Young lacked reasonable suspicion to stop him. Defendant responds that because the district court found that the surveillance footage was "basically accurate" we must defer to its factual findings. In the order granting Defendant's motion, the district court concluded that the surveillance footage showed that it was "not possible that Defendant's vehicle [was] the same gold car [that Deputy Young] had just seen speeding on Coors Boulevard less than one minute before the stop." Because of this impossibility, the district court found both that Deputy Young's mistake of fact regarding the correct car was unreasonable and that he could not show adequate "particularized suspicion, based on the totality of the circumstances known to [Deputy Young], that [Defendant] was engaged in wrongdoing or [had] completed a crime."

{7}      We agree with the State that the district court improperly relied on the surveillance footage, depicting the sequence of events before Deputy Young arrived at the gas station, in its determination that Deputy Young lacked reasonable suspicion to stop Defendant. The surveillance footage was only later discovered by Defendant and it is undisputed that Deputy Young had no knowledge of its contents. Although "[w]e give deference to the district court's findings of fact," *State v. Salazar*, 2019-NMCA-021, ¶ 12, 458 P.3d 546, our determination of "[r]easonable suspicion is viewed from the perspective of what the officer *knew* at the time the officer detained [Defendant]." *See State v. Aguilar*, 2021-NMCA-018, ¶ 16, 488 P.3d 698 (emphasis added). The portion of the surveillance footage from before Deputy Young arrived at the gas station bears no weight on our determination of reasonable suspicion, because those facts were outside of his knowledge at the time he decided to conduct the stop. *See State v. Simpson*, 2016-NMCA-070, ¶ 12, 388 P.3d 277 (stating that the question we ask when reviewing reasonable suspicion is, "Would the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate?" (alteration, internal quotation marks, and citation omitted)).

## B.      Deputy Young Had Reasonable Suspicion to Stop Defendant

{8}      Without consideration of the portion of surveillance footage relied on by the district court, we now address the State's argument that the circumstances known to Deputy Young support a finding of reasonable suspicion. Since the facts in this case are undisputed, we limit our review to a de novo consideration of whether the law was correctly applied to the facts. *See Sewell*, 2009-NMSC-033, ¶ 12.

**{9}**     The State argues that Deputy Young had reasonable suspicion when he stopped Defendant based on the circumstances that were known to him at the time. Defendant responds that the information known to Deputy Young did not support a finding of reasonable suspicion, asserting that the district court expressed concern about Deputy Young's confidence that he had the right car. We agree with the State.

**{10}**     A police officer may, without probable cause, "detain a person to investigate possible criminal behavior . . . if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Simpson*, 2016-NMCA-070, ¶ 11 (internal quotation marks and citation omitted). "Reasonable suspicion is measured by an objective standard based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 59, 149 N.M. 435, 250 P.3d 861.

**{11}**     The evidence demonstrates that Deputy Young had reasonable suspicion to stop Defendant when he pulled into the gas station. At the suppression hearing, Deputy Young testified that around two o'clock in the morning he saw a gold, four-door sedan driven by a man wearing a hoodie traveling, at a high rate of speed above the posted speed limit, southbound on Coors Boulevard. There were only "a few" vehicles on the road at that time, and he did not notice any other gold vehicles in the area. Deputy Young "stated that the vehicle continued on Coors Boulevard before turning left onto Gun Club Road." He briefly lost sight of it before he also turned onto Gun Club Road, where he saw a man wearing a hoodie standing next to a gold, four-door sedan parked at the gas station. Deputy Young testified that only about one minute had passed between him seeing the vehicle and making the stop. Based on his observations, he believed that the man standing beside the gold, four-door sedan was likely the same person he had just observed speeding moments before.

**{12}**     Although the district court noted that Deputy Young "could not say beyond a doubt that the car he stopped was the same vehicle he had seen driving, but that he . . . assumed it was the same car based on its color and the driver wearing a hooded jacket," reasonable suspicion does not require certainty—it inherently "engages probabilities." *See State v. Yazzie*, 2016-NMSC-026, ¶ 33, 376 P.3d 858; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 346 (1985) ("[T]he requirement of reasonable suspicion is not a requirement of absolute certainty: sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." (internal quotation marks and citation omitted)). Because of the similarities between the vehicle that Deputy Young observed speeding and Defendant's vehicle, the similarities in description of the person he saw driving and Defendant, the time of day, and the close proximity between where he saw the vehicle speeding and the gas station, where he saw Defendant parked—we conclude that, despite his mistake about the underlying facts, Deputy Young initiated the stop based on reasonable suspicion that Defendant committed a traffic violation. *See State v. Goodman*, 2017-NMCA-010, ¶ 6, 389 P.3d 311 (stating

that a traffic stop may be based on reasonable suspicion of a violation of traffic laws or that "a particular individual is breaking or has broken the law).[1]

## II. Article 11, Section 10 of the New Mexico Constitution

**{13}** We now address Defendant's rights under the New Mexico Constitution, concluding that Article II, Section 10 provides no greater protections, under the facts of this case, than the United States Constitution.

**{14}** In relevant part, Article II, Section 10 provides that, "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Although, as Defendant argues, New Mexico courts have interpreted Article II, Section 10 to provide broader protections against unreasonable searches and seizures in some contexts, *see Leyva*, 2011-NMSC-009, ¶ 3, "we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop." *Yazzie*, 2016-NMSC-026, ¶ 38. "We have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses." *Id*.

**{15}** Because we apply the same standard of reasonable suspicion under both the New Mexico and United States Constitutions, we conclude that the traffic stop did not violate the New Mexico Constitution.

## CONCLUSION

**{16}** For the foregoing reasons, we reverse the district court's grant of Defendant's motion to suppress and remand to the district court for further proceedings.

**{17} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**

---

[1]"'[T]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable.'" *State v. Dopslaf*, 2015-NMCA-098, ¶ 10, 356 P.3d 559 (quoting *Heien v. N. Carolina*, 574 U.S. 54, 66 (2014)).